**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CHRISTOPHER R. ROBINSON,
Plaintiff-Appellant,

v.

NEW LINE CINEMA CORPORATION;
NEW LINE PRODUCTIONS,
INCORPORATED; PEAK PRODUCTIONS,
INCORPORATED; OREN KOULES; DALE

POLLOCK; TAKASHI BUFFORD; MARY
PARENT; KATE LANIER,
Defendants-Appellees.

and

ALLEN ALSOBROOK,
Defendant.

No. 99-2167

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-97-3859-AMD)

Argued: February 28, 2000

Decided: April 14, 2000

Before LUTTIG and TRAXLER, Circuit Judges,
and G. Ross ANDERSON, Jr., United States District Judge
for the District of South Carolina, sitting by designation.

_____

Reversed and remanded by unpublished per curiam opinion. Judge
Traxler wrote an opinion concurring in part and dissenting in part.

_____

**COUNSEL**

**ARGUED:** Francis Joseph Gorman, GORMAN & WILLIAMS, Baltimore, Maryland, for Appellant. Nell Berelson Strachan, VENABLE, BAETJER & HOWARD, L.L.P., Baltimore, Maryland, for Appellees.
**ON BRIEF:** Charles L. Simmons, Jr., GORMAN & WILLIAMS, Baltimore, Maryland, for Appellant. Dino S. Sangiamo, VENABLE, BAETJER & HOWARD, L.L.P., Baltimore, Maryland, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiff-appellant Christopher Robinson appeals from the district court's grant of summary judgment to defendants-appellees on his claim that they infringed the copyright in his screenplay in violation of the Copyright Act, 17 U.S.C. § 101 et seq. For the reasons stated herein, we reverse and remand.

I.

Appellant Christopher Robinson submitted a copy of his screenplay, "Sister Sarah," to appellee New Line Cinema Corporation (hereinafter "New Line") in 1993. Robinson addressed this submission to Amy Labowitz, the manager of New Line's Acquisitions Department, whom he had earlier phoned in order to promote "Sister Sarah." Upon receipt of Robinson's script, Labowitz had the details of the script's submission logged into New Line's computerized "script library system," J.A. 1128, and sent the script to an outside contract reader. After that reader recommended that New Line "pass" on the script, Labowitz returned the script to Robinson.

Shortly thereafter, appellee Takashi Bufford submitted a screenplay entitled "Set It Off" to his contact at New Line, Helena Echegoyen,

2

an executive in the Productions Department who had a mandate to develop "black genre" films. Both "Set It Off" and "Sister Sarah" are screenplays about black women committing armed robberies. After New Line released the movie "Set It Off" in 1996, Robinson brought this copyright infringement action against, inter alia, Bufford and New Line. The district court granted summary judgment to defendants, holding that no reasonable jury could find for Robinson on two critical elements of Robinson's prima facie case: Bufford's access to Robinson's screenplay, and the substantial similarity between the two screenplays. The district court also dismissed Robinson's unfair competition claims, brought under the Lanham Act, 15 U.S.C. § 1125 et seq., and under Maryland law. Robinson appeals only the summary judgment on his copyright infringement claim.

II.

In order to prove copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Telephone Serv. Co., Inc., 499 U.S. 340, 361 (1991). Because defendants have conceded, for purposes of summary judgment, that Robinson owned a valid copyright in "Sister Sarah," only the second element is at issue. And because there is no evidence of direct copying, Robinson can establish a prima facie case of infringement only by showing that: (1) Bufford had a "reasonable possibility of access" to Robinson's screenplay, and (2) the two screenplays are "substantially similar." Towler v. Sayles, 76 F.3d 579, 582-83 (4th Cir. 1996).

A.

We disagree with the district court's conclusion that Robinson failed to create a genuine issue of material fact as to whether Bufford had a "reasonable possibility of access" to Robinson's screenplay. It is undisputed that Labowitz received Robinson's script and had the details of the script's submission logged into New Line's computerized "script library system." And Robinson has set forth sufficient facts in the record to require us to assume that Echegoyen and Bufford had a very close working relationship and discussed "Set It Off" and other projects on which Bufford was working. Therefore, to sur-

3

vive summary judgment, Robinson only needed to set forth sufficient facts in the record to create a triable question of fact as to whether it was reasonably possible that Echegoyen had access to a copy of the script originally given to Labowitz by Robinson.

We believe that Robinson has satisfied this requirement. First, Robinson has proffered evidence that Labowitz and Echegoyen worked for the same company in the same building, only two floors apart. Second, he proffered evidence that both of them attended the same weekly meeting for New Line executives. And, third, even if Robinson's script was not discussed or given to Echegoyen at these meetings, from this evidence, one could infer that, through these meetings, Labowitz and others in Labowitz's department would have been made aware of Echegoyen's special mandate to produce "black genre" films such as "Set It Off" and "Sister Sarah."

Based upon this evidence, a reasonable jury could find that it was reasonably possible that Echegoyen had access to a copy of the script originally given to Labowitz by Robinson. For example, a reasonable jury could conclude that it would have been natural for Labowitz to have thought to and wanted to share Robinson's screenplay with Echegoyen, once Labowitz learned of Echegoyen's special mandate, and that she did so share the script with her. The mere fact that Labowitz and Echegoyen now have "no recollection" of this, J.A. 578, 588, does not foreclose a jury from finding that such did occur. Or, that same jury could reasonably conclude that Echegoyen obtained a copy of Robinson's script without Labowitz's knowledge, given that the details of that script had been logged into New Line's computerized script library system, which library system was accessible to Echegoyen.

B.

Had the district court reached its conclusion that "Sister Sarah" and "Set It Off" are not substantially similar after having conducted a bench trial in which it had heard all the evidence, we might very well agree with the conclusion that follows from the district court's thorough and careful analysis of the lack of substantial similarity between the two screenplays. However, we cannot say as a matter of law that the similarities between the two screenplays are so attenuated or gen-

4

eral that no reasonable jury could find that "Sister Sarah" and "Set It Off" are substantially similar.

As to the "extrinsic similarities [. . .] in plot, theme, dialogue, mood, setting, pace, or sequence" that comprise the first prong of the two-part inquiry into substantial similarity, Towler, 76 F.3d at 583-84, we conclude that a reasonable jury could find that in both "Sister Sarah" and "Set It Off," the overriding theme of violent retaliation against the perceived socioeconomic and racial injustices of society, as experienced by a group of predominantly lower-income black women, is expressed through concrete elements such as plot that, though not identical, are substantially similar. Both screenplays begin with examples of such perceived injustices: the allegedly wrongful shooting of Stony's brother (Stevie) by mainly white police officers in "Set It Off," and the criminal justice system's allegedly unfair treatment of Sarah's sister (Paris) for the justifiable homicide of their father in "Sister Sarah." Then, in both screenplays, Stony and Sarah respond by galvanizing a group of old friends to conduct a series of armed robberies in order to amass enough money to enable them all to escape from their lives of inner-city desperation and poverty. Both screenplays culminate in robberies at the places of employment of Stony and Sarah's male love interests. And both "Sister Sarah" and "Set It Off" end with the guilt-ridden white police detective allowing Stony and Paris to escape abroad.

Notwithstanding the non-negligible differences between "Sister Sarah" and "Set It Off" that become apparent once the preceding sequence of events is articulated with a greater degree of particularity than we have set forth above, we conclude that the extrinsic similarities between "Sister Sarah" and "Set It Off" are not so attenuated or general as to foreclose a reasonable jury from finding that the two works are extrinsically similar.

Similarly, we are persuaded by our review of both scripts and of the movie "Set It Off" that reasonable minds could differ as to whether the "total concept and feel" of the two works, which comprise the second prong of the inquiry into substantial similarity, Towler, 76 F.3d at 584, are similar. We recognize that the district court may ultimately turn out to be correct that, in contrast to "Set It Off,"

5

> [a]fter reading "Sister Sarah," a lay observer will not become attached to the characters, will not understand why the gang was committing crimes in the first place, and will not feel a sense of sympathy for them[.]

J.A. 1264. However, the "intrinsic" dissimilarities between the two works are not so great as to permit the court to rule as a matter of law for defendants on an inquiry as inherently subjective and as quint-essentially within the province of the jury as the"total concept and feel" of two screenplays. See Shaw v. Lindheim, 919 F.2d 1353, 1359 (9th Cir. 1990).

CONCLUSION

Because a reasonable jury could conclude that Bufford had a "reasonable possibility of access" to Robinson's screenplay, and because a reasonable jury could also conclude that "Sister Sarah" and "Set It Off" are substantially similar, we reverse the district court's grant of summary judgment to defendants on Robinson's copyright infringement claim, and remand for further proceedings with respect to that claim.

REVERSED AND REMANDED

TRAXLER, Circuit Judge, concurring in part and dissenting in part:

I concur in Parts I and IIA, but respectfully dissent as to Part IIB. I recognize there are similarities between the two works; but in my opinion they are not substantial as a matter of law. The common themes can be summarized as follows: A group of women, mostly African-American, commit a series of armed robberies to raise money. One of these women falls in love with a man who works at the last location the women rob. In the end a detective sees one of the women getting away and, presumably sympathetic with the cause of her legal difficulties, lets her escape.

Even these few common aspects have significant differences. In "Sister Sarah" there are five women involved, one of whom is white, who are committing robberies from the outset of the screenplay for

6

undisclosed reasons. Eventually, Sarah and her friends agree to continue robbing to bail one of their gang members out of jail. "Set It Off" portrays four women, all of whom are African-American. These women want money so that they can escape the projects and have better lives, but they begin robbing banks to achieve their goal only after one's brother is mistakenly killed by police officers and another is in danger of losing her child to state protective services. In "Sister Sarah," Sarah shoots her lover during a robbery after he has stabbed her in the hand, but they marry in the end. In "Set It Off," Stoney's lover is lured to another location while the women rob the place where he works, and he suffers no harm. Also, there is no happy ending to this love story as Stoney leaves the country alone. Finally, the officers who let the women escape have entirely different reasons for allowing them to leave.

When I view the two scripts in terms of "plot, theme, dialogue, mood, setting, pace, [and] sequence," Towler v. Sayles, 76 F.3d 579, 584 (4th Cir. 1996), I cannot conclude the plaintiff can prove substantial similarity. For this reason I would affirm the thorough analysis and decision by the district court.

7